Gregory B. Smith (USB 6657)
GREG SMITH & ASSOCIATES
7324 South Union Park Avenue
Midvale, UT  84047
(801) 641-3397
gs@justiceinutahnow.com

*Attorney for Plaintiff, Ely Souza*

## IN THE UNITED STATES DISTRICT COURT
## STATE OF UTAH

| | |
|---|---|
| ELY SOUZA and ROB FLOOK<br><br>Plaintiffs,<br><br>*vs.*<br><br>SABRINA EBERLING and BROTHERHOOD MOTORS, an UTAH LLC,<br><br>Defendant | **COMPLAINT FOR UNPAID WAGES UNDER THE FLSA AND VIOLATIONS OF UTAH LAW**<br><br>**(JURY TRIAL DEMANDED)**<br><br>Case No.<br><br>Judge |

Plaintiff, ELY SOUZA, and ROB FLOOK, by and through their counsel, hereby complain against Defendants, SABRINA EBERLING and BROTHERHOOD MOTORS, demanding a trial by jury, and seeking relief as follows:

### I.   PARTIES

1. Plaintiffs are residents of Utah, who reside in Weber County, State of Utah. Sabrina Eberling is also a Utah citizen, who resides in Weber County, State of Utah. Brotherhood motors is a Utah company whose entity number is 12332014-0160.

1

The Company Type is an LLC – Domestic whose address is 476 HERITAGE PARK BLVD #230-1 Layton, Utah 84041. The Registered Agent is SABRINA NADIA EBERLING, whose Registered Agent Address is 476 HERITAGE PARK BLVD 230-I, LAYTON, UT 84041

## II.   JURISDICTION AND VENUE

2. The Court has jurisdiction under the United States Fair Labor Standards Act of 1938, §§ 7, 15(a)(3), 29 U.S.C.A. §§ 207, 215(a)(3); 29 C.F.R. § 778.111. The Court also has supplemental jurisdiction of the Utah state claims pursuant to 28 U.S. Code § 1367.

3. Venue is proper in this Court (pursuant to 28 U.S.C. § 1391) because the activities took place in the State of Utah (within the territorial limits of the Court).

## III.   STATEMENT OF FACTS/CLAIM

4. On or about early October of 2021 (Thursday, October 14), Sabrina Eberling became the legal owner of Brotherhood Motors. Exhibit 1.

5. Her attorney, Matthew Strout, in a letter dated December 16, 2021, published a letter that made it clear Sabrina Eberling owned Brotherhood Motors,

6. and that Ely Souza was not authorized to do any business for Brotherhood Motors. Exhibit 2.

7. Attorney, Matthew Strout, made it clear that the *only* person authorized to act for Brotherhood Motors is Sabrina Eberling:

2

"who is the sole member of the company (Brotherhood Motors is a member-managed limited liability company). Accordingly, only Ms. Eberling is permitted to engage in *any* transactions under the dealer number 483B, use dealer plates starting with 483B, or act for or contractually bind Brotherhood Motors LLC." Italics added.

8. When she became the legal owner of Brotherhood Motors, Ms. Eberling hired Ely Souza to work for her.

### The unpaid wage and hour issue

9. In other words, Defendants (Ms. Eberling and Brotherhood Motors)

    a. offered to pay Ely Souza for his work, and

    b. he accepted their offer to work for them,

    c. and with Defendants' full knowledge, blessing and awareness, worked diligently for them, given them his full time and efforts.

10. (Alternatively, Defendants suffered that Ely Souza work for them, and they accepted his work product, of which they had been fully apprised.)

11. Defendants were engaged in interstate commerce the entire time that Ely Souza worked for them.

12. Ely Souza became Defendants' employee, and he was non-exempt for purposes of the United States Fair Labor Standards Acts (FLSA).

13. Defendants agreed to pay Ely by the hour, not by salary.

14. Both Defendants were "employers" of Mr. Souza at all time while Mr. Souza worked for them.

15. Both Defendants acted directly as Mr. Souza's employers.

16. Ms. Eberling was in charge of directing the employment of Mr. Souza.

    a. She hired and fired him.

    b. She demanded that he answer all of her calls 24/7.

    c. She demanded that he deal with every issue regarding every car and customer.

    d. She demanded Mr. Souza to attend meetings (usually just with her in person or by phone).

17. The first pay period was for 60 hours, and the agreed-upon pay was to be $60 per hour, per the oral conversations of the Parties.

18. Defendants failed to keep records of Mr. Souza's hours.

19. His first paycheck (which was never paid) was to be for three (3) days, which was also for 60 hours: Thursday October 14th through Saturday, October 16th.

    a. Of those hours, 40 were straight time at $60 per hour, which should have been $2,400.

    b. To date none of the hours have been paid, nor have any other of his hours been paid (he is still owed for minute he worked for Defendants).

    c. Of those hours, 20 were overtime hours, which should have been paid at $90 an hour, or $1,800.

4

    d. The total now owed for those days is $4,200, not including liquidated damages for the unpaid minimum wages and overtime.

20. Because he was not paid, Defendants failed to pay him minimum wage of $7.25 an hour; thus he is also owed $435 dollars in liquidated damages for those ($7.25 * 60).

21. The liquidated damages amount on the unpaid overtime for those three days is $600 (time and a half should be paid for the overtime hours, and a penalty of an equal amount for liquated damages).

22. Thus the total he is owed for those three days is **$5,235**.

23. From that time until Friday, December 3, 2021, she had Ely Souza working for her/Brotherhood Motors, but Defendants failed to pay him.

    a. Then, the next pay period was Sunday, October 17th through Saturday, October 23rd.

    b. Ely Souza worked 20 hours per day (only sleeping about 4 hours per day).

    c. He was owed for 120 hours. Forty (40) of those was for $2,400. Eighty (80) of those were for $7,200 ($9,600 in wages).

    d. The liquidated damages for unpaid minimum wage is $870.

    e. The liquidated damages for unpaid overtime is (80 * $30) $2,400.

    f. Thus, the total owed from that week is **$12,870**.

24. From October 24th through October 30th is an additional **$12,870**

25. October 31 through November 6th is an additional **$12,870**.

26. November 7th through the 13th is an additional **$12,870**.

27. November 14th through the 20th is an additional **$12,870**.

28. November 21st through the 27th is an additional **$12,870**.

29. November 28th through December 3rd is an additional **$11,032**.

30. The total owed for unpaid wages and liquidated damages is **$93,487**.

## The House Issue

31. Prior to obtaining Brotherhood Motors, Sabrina Eberling offered and agreed to give Ely Souza half the equity/ownership of her home if Ely would help her obtain ownership of Brotherhood Motors.

32. Ely accepted her offer, and arranged things so that Sabrina Eberling gained ownership of Brotherhood Motors.

33. The Parties signed an agreement stating such.

34. Prior to the filing of this lawsuit, upon information and belief, Sabrina Eberling destroyed that document, or decided to hide it, so that evidence of such would not be available to Mr. Souza.

35. Mr. Souza is half owner of the property at 4068 West 4600 South, Roy, Utah 84067.

## Money and labor put into the home by Mr. Souza

36. Mr. Souza has put at least $25,000 into the home at issue, and put labor into the home, which is valued at $70,000 (at least).

6

37. He also did work on the bedroom, bathrooms, basement, garage and yard (fencing and sprinklers), which totaled thousands of dollars.

38. Mr. Souza paid half the property tax on the home for the last year.

39. He also put a new washer and dryer into the house, whose value was $4,000.

### Sabrina Eberling's unpaid loan

40. Mr. Souza also gave her a loan of $7,000 to buy a Hyundai Santa Fe,

41. which she has not paid back, but needs to do so.

42. The money was not given as a gift.

### Sabrina Eberling's interference with chattels and conversion

43. Currently, Sabrina Eberling is denying Plaintiff possession of one of his cars: 2009 Mazda 3, which is titled his name,

44. but in Sabrina Eberling's house.

45. Currently, Sabrina Eberling is denying Plaintiff possession of his trailer.

    a. Mr. Souza gave Ms. Eberling $1,900 cash of his own money to give to Mr. Souza's brother, José,

    b. so that José's fifty percent ownership would be paid off.  Exhibit 3.

    c. Ms. Eberling gave José the money,

    d. then José gave her the title.

7

    e. Instead of putting the title in Mr. Souza's name, she put the title in her own name (she paid nothing for the trailer with her own money). Exhibit 4, which shows the title was in José's name.

    f. The trailer had been bought by the two brothers from Extreme Trailers in Ogden, Utah, for their personal use, and Sabriana Eberling knew she had no claim to it whatsoever.

    g. She refuses to give the title and possession to Mr. Souza.

    h. The trailer that she seized is valued at $4,800.

    i. A week or so before Ms. Eberling converted the trailer, Mr. Souza had paid $500 or so to have an electric winch put on it.

**Sabrina Eberling converted Mr. Souza's case and other monies**

46. Ms. Eberling accessed Mr. Souza's safe (on or about December 2, 2021), and took $30,000 of his money without any permission from him.

47. Ms. Eberling (on or about the same time) took about $50,000 from a joint bank account, without any authorization from Mr. Souza,

48. and has refused to give him his portion.

49. The money she unlawfully took from Mr. Souza is at least $55,000.

50. Sabrina's taking of the money, car and trailer were acts of willful interference with Mr. Souza'sproperty,

51. and she did these things without lawful justification.

52. Mr. Souza, who is entitled to the property she seized has been deprived of the use and possession of such property,

53. and while Sabrina Eberling was seizing (converting) such, Mr. Souza was entitled to the immediate possession of the property.

### Ely Souza's tools

54. Sabrina Eberling has converted Mr. Souza's tools,

55. which she keeps at the home in question, and denies his access to such.

56. The tools are valued at $35,000 (these are SnapOn Tools).

### Mr. Flook's matter

57. On or about November of 2021, Rob Flook contacted Ely Souza.

58. Mr. Flook wanted to purchase a car from Murdock Hyundai, which did not have an operational engine (so he could fix it up, and make money off it).

59. Ely Souza picked up a car for Mr. Flook from Murdock Hyundai in Murray, Utah, and Brotherhood Motors sold it to Mr. Flook for $1,500.

60. Mr. Flook took possession of the car, and he bought a motor for it (to make it run, and to increase its value).

61. He paid about $750 for the motor, and then he installed it.

62. The installation took about two weeks of his labor (about 70 hours).

63. After the vehicle was ready to go, Ely secured a sale for Mr. Flook.

64. Mr. Flook took the car to Larry H. Miller Used Cars Supermarket in Sandy, Utah.

65. He gave Larry H. Miller the title.

66. Brotherhood Motors had given Mr. Flook the title from Murdock Hyundai.

67. Larry H. Miller then said they would have the check ready for him (for $6,500).

68. Mr. Flook was going to pay Ely $500 for helping him,

69. so Mr. Flook was going to have the check made out to Brotherhood Motors, who would cash the check, take out $500 for themselves,

70. then give Mr. Flook $6,000 (the remainder).

71. Ely picked up the check, and he gave it to Rob Flook to give to Sabrina Eberling.

72. Mr. Flook then gave the $6,500 check to Sabrina.  Exhibit 5.

73. Sabrina then told Mr. Flook the check was stolen;

74. thus, she was not going to pay him the $6,000.

75. The check was not stolen, and Ms. Eberling just fabricated that it was.

76. To date, Mr. Flook has not been paid by Brotherhood Motors and Sabrina Eberling,

77. and he is out his labor and the costs of the parts he put into the car.

78. Sabrina Eberling has converted the labor and efforts of Mr. Flook.

## IV. CAUSES OF ACTION

79. The above facts are incorporated by reference.

80. Mssrs. Souza and Flook assert any cause of action that may be supported by the facts, whether now known or unknown (discovery should further clarify such).

81. Mr. Souza asserts that Defendants *breached contracts* with him under Utah State law:

10

    a. by not paying him his wages (which were agreed upon),

    b. by refusing to give him half the house (which was agreed upon),

    c. and refusing to pay him back for the money her lent her to buy the Hyundai Santa Fe (she does not allow him access to the car, and this money was not given as a gift).

82. Mr. Souza asserts *willful violations of the FLSA* (Defendants not properly paying him both minimum wage and overtime) by Sabrina Eberling for which he entitled to damages, legal fees and costs, and liquidated damages per United States law.

83. Conversion. She should pay him for what she took from him unlawfully.

    a. Sabrina Eberling has converted substantial amounts of money from Mr. Souza, for which she should pay him back.

    b. She should give Mr. Souza his trailer, car and tools (or pay him for all of them).

84. What she did was willful and malicious.

85. *Intentional interference with a contractual relationship.*

    a. Sabrina intentionally interfered with the plaintiff's existing or potential economic relations between him and his brother José, (2) and she did so for an improper purpose (converting his property) or by improper means (signing her name to a title, which she knew did not belong to her), and (3) she caused injury to the plaintiff (she still has the trailer), and her

11

      actions prevent Mr. Souza from hauling cars (which costs him at least $60 per day).

86. A claim for *unjust enrichment*: (1) many benefits were conferred on Sabrina person by Mr. Souza (lending her money for the Santa Fe, fixing up and remodeling the home at issue, working for Brotherhood Motors, etc.); (2) Ms. Eberling certainly had an appreciation or knowledge of the benefits (the benefits were obvious); and (3) Ms. Eberling accepted or retained the benefits of such, which would make it highly inequitable for her to retain the benefits without paying for the value of those benefits.

87. Utah law is clear:  Generally the donee has the burden of proving a gift. Blackburn v. Jones, 59 Utah 558, 205 P. 582; Ward v. Ward, 94 Ore. 405, 185 P. 906. Mace v. Tingey , 106 Utah 420, 427, 149 P.2d 832, 835 (Sup.Ct. 1944).

### Mr. Souza has been battered by Ms. Eberling on various occasions

88. On or about July of 2021, Ms. Eberling acted, in a terrible and uncivil way, intending to cause a harmful or offensive contact with Mr. Souza.

    a. As he turned and walked away (left the bedroom for the bathroom) she angrily followed him.

    b. As he closed the door, he looked back at her.

    c. At point she attacked him by slamming the door in his face, knowing such would hit his face, which happened.

    d. She slammed the door in his face to hurt him, and blood came out of his mouth.

12

    e. His mouth still hurts because of the attack, which broke a crown that he had in his mouth.

    f. The cost of repaiting his mouth will be around $2,500.

    g. He still has pain and suffering as a result.

89. On or about late November, she attacked him again.

    a. He was working on a car.

    b. She lit up a cigarette and started to berate him, telling him that he needed to fill out a document, so she would know where he was at all times.

    c. He walked towards his work bench.

    d. That made her angry, so she picked up a pipewrench, that was longer than a foot and very heavy, and threw it at his head.

    e. Such easily could have taken out one of his eyes.

    f. He ducked, but it still hit him on the head, which caused blood to gush out.

    g. He still suffers headaches from such.

    h. She did this willfully and maliciously.

    i. His injuries and damages were the direct result of her attacks.

90. During these attacks, she intended for there to be an imminent apprehension of such contact by Mr. Souza, and there was such.

91. Harmful contacts by Ms. Eberling took place upon Mr. Souza, who had to call the police.

92. She intended to harm him, which she did.

93. The contacts were deliberate, and were harmful and offensive at law.

94. Mr. Souza never consented either directly or by implication to the conduct/attacks, and no reasonable person would have consented to such.

## V. PRAYER FOR RELIEF

95. That the Court order that the trailer, Mazda 3, and the tools be restored to Mr. Souza,

96. or that she buy them from him at the market rates of when she took such things,

97. and that the Court order that Mr. Souza is half owner of the home at issue.

98. The measure of damages in an unjust enrichment action is the reasonable value of the services provided, which will be established at trial, but the above facts should provide a good roadmap on how to arrive at the reasonable value.

99. Plaintiff prays that Defendants be ordered to pay him all the unpaid minimum wages and overtime consistent with the facts (many of which have been shown *supra*, which will be shown at trial, and which may be surmised via discovery).

100. Mr. Souza also seeks the appropriate liquidated damages owed under the FLSA, plus all of his attorney's fees and costs that relate to this case.

101. Mr. Souza also asks for treble damages based on Ms. Eberling's duplicity and conversion (or punitive damages).

102. Mr. Souza asks for damages for the batteries committed against him in an amount to be established at trial, but not less than $20,000.

103. Mr. Flook also seeks to be paid the $6,000 he is owed, plus any other relief that is fair and just (such as punitive or treble damages), and his legal fees and costs.

104. Plaintiffs ask the Court to follow well-established reasoning on issues such as the ones presented in this lawsuit.[1]

105. They both ask for pre- and post-judgment interest and for any other amount that is equitable and just.

DATED this 30th day of December, 2021

/s/ Gregory B. Smith, attorney for Plaintiffs

---

[1] "The primary objective in rendering an award of damages for conversion is to award the injured party full compensation for actual losses. The damages in an action for conversion are measured by the sum of money necessary to compensate the plaintiff for all actual losses or injuries sustained as a natural and proximate result of the defendant's wrong. Special damages may be recovered in an action for conversion for any injury proximately resulting from the conversion. Damages flowing from the conversion which are not ordinary, usual, or commonly to be expected, are recoverable if, under the circumstances, it can be fairly said that both parties have these consequences in contemplation at the time of the wrong complained of, as the probable result thereof, and if these unusual consequences are neither uncertain, unnatural, nor remote as to cause, nor speculative and conjectural in effect. Thus, compensation for time lost as a proximate result of the conversion, or for time and money spent in pursuit of the property converted, may be recovered. The owner may also recover special damages resulting from the withholding of the property." *Henderson v. For-Shor Co.*, 757 P.2d 465, 466 (Utah Ct. App. 1988)

15

16

# Appendix